# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Mary Ferrara, individually,**<br>**and on behalf of those similarly situated**<br>**54 Cheriton Road**<br>**Quincy, MA 02170**<br><br>    **Plaintiffs,**<br><br>  **v.**<br><br>**Toyota Motor Sales, USA, Inc.**<br>**19001 Southwestern Avenue, Dept. WC11,**<br>**Torrance, California 90501**<br><br>  **and**<br><br>**Toyota Motor Corporation**<br>**1 Toyota-Cho**<br>**Toyota City, Aichi Prefecture 471-8571,**<br>**Japan**<br><br>    **Defendants.** | **Civil Action No.:**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, by her attorneys, brings this Complaint on her own behalf and on behalf of all others similarly situated to obtain declaratory and injunctive relief, damages, costs of suit, and attorneys' fees from the defendants. Plaintiff complains and alleges, upon information and belief, as follows:

## NATURE OF ACTION

1.      This is a class action against the defendants, Toyota Motor Sales, USA, Inc. and Toyota Motor Corporation (collectively "Toyota") on behalf of all parties in Massachusetts and entities who own or lease a motor vehicle. Defendants have designed, manufactured, distributed,

advertised, marketed, promoted, and sold defectively designed vehicles to consumers throughout Massachusetts with defective parts that made them susceptible to accidents.

## JURISDICTION AND VENUE

2.      Venue is properly in this Court pursuant to 28 USC § 1391 because all or part of defendants' conduct alleged herein occurred in this Commonwealth, where defendants carries on regular business.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. The matter in controversy exceeds the sum or value of $5 million and plaintiffs and defendants are citizens of different jurisdictions.

## THE PARTIES

4.      Plaintiff, Mary Ferrara resides at 54 Cheriton Road, Quincy, Massachusetts 02170. Ms. Ferrara purchased her vehicle on May 28, 2007. She purchased a new Toyota Camry at Toyota Lamothe.

5.      Defendant, Toyota Motor Sales, USA, Inc. is located at 19001 Southwestern Avenue, Dept. WC11, Torrance, California 90501.

6.      Defendant, Toyota Motor Corporation is a Japanese Corporation having its principal place of business at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan. Toyota Motor Corporation designs, develops and manufactures automobiles that are sold throughout the world.

## FACTS

7.      Defendants manufacture and sell the vehicles recalled which were widely used throughout the Commonwealth of Massachusetts for the class period.

2

8.     Toyota Motor Corporation is the world's largest automobile manufacturer, with approximately $270 billion in revenue.  It designs and develops a wide range of automobiles including the brands Toyota, Lexus and Scion.

9.     Toyota Motor Sales, USA, Inc., a subsidiary of the Toyota Motor Corporation, distributes, markets and sells the Toyota, Lexus and Scion automobiles throughout the United States (Toyota Motor Corporation and Toyota Motor Sales, USA, Inc. collectively referred to as "Toyota").  Approximately two million Toyota vehicles are sold annually in the United States through over 1,500 dealerships.

10.    Toyota    prides    itself    on    the    safety    of    its    vehicles.    The    website www.SafetyToyota.com, devoted exclusively to promoting the safety of Toyota vehicles, claims:

> "What can we do to realize an ideal vehicle, which is a goal we never cease pursuing?  That is what we always have in mind. What technology can prevent an accident in any situation and minimize the damage in an accident?  Toyota has been developing various safety technologies by using variant means..., in addition to the verification at the collision test center that can reproduce many different types of accidents. 'What causes accidents?' 'What can be done to prevent accidents?' 'What mitigates the damage of accidents that have occurred?'  These are the questions to which we are constantly seeking answers.  Our technologies will continue to advance toward the ultimate goal of making a vehicle that is safe for everybody."

11.    Toyota automobile owners have been reporting incidents of sudden unintended acceleration of their vehicles since the 1990s.  Sean Kane, a safety researcher, reported that he had found 19 deaths and 341 injuries stemming from 815 separate crashes involving Toyotas and sudden acceleration.

12.    The National Highway Traffic Safety Administration ("NHTSA"), which helps investigate consumer complaints of automotives, has, over the years, received far more sudden

acceleration complaints for Toyota vehicles than for any other manufacturer. As a result of these complaints, NHTS has launched more investigations into Toyota vehicles concerning the issue than all other automobile manufacturers combined. These investigations, relying on data provided by Toyota, had concluded that most of the accidents were caused by drivers accidentally hitting the accelerator pedal as opposed to the brakes.

13. Further, Toyota has downplayed or dismissed owner complaints, blaming it on driver error or other situation-specific reasons.

14. In 2007, due to an overwhelming number of customer complaints, Toyota conducted an investigation and determined that the floor mats were the cause of the accelerator problems, as it had the tendency to obstruct the accelerator pedal. Toyota further announced that the accelerator pedals were in no way a safety threat.

15. On August 28, 2009, California Highway Patrol Officer Mark Saylor, while driving on the San Diego Freeway, could not slow down his 2009 Lexus ES 350 even after continuously applying the brakes, reaching speeds upwards of 130 miles per hour. While driving, he was on the phone with the police dispatcher and said: "We're in trouble...There's no brakes." Moments later, Officer Saylor, as well as three others on board, were dead.

16. A month after the Saylor tragedy, and after mounting pressure, Toyota recalled approximately four million vehicles from model years as far back as 2004 (the "September 2009 Recall").

17. Toyota, however, again claimed that the recall was due to improper installation of floor mats causing them to jam the accelerator pedal, and no defect with the accelerator existed. NHTSA, who believed there was an underlying problem with the accelerator pedals, criticized Toyota for making "inaccurate and misleading statements."

18.     Shortly after the September 2009 Recall, the Los Angeles Times conducted an investigation into Toyota's safety issues over the past several years.

19.     On January 21, 2010, Toyota finally admitted that the accelerators were not entirely free from defects, as Toyota had stated time and time again, announcing in a press release that "Our investigation indicates that there is a possibility that certain accelerator pedal mechanisms may, in rare instances, mechanically stick in a partially depressed position or return slowly ot the idle position."

20.     Following the announcement, Toyota announced an additional recall of 2.3 million U.S. built cars and trucks (the "January 2010 Recall") (all Toyota vehicles recalled for the sudden acceleration problem referred to as "Recalled Vehicles").  These models included the 2009-2010 RAV4, 2009-2010 Corolla, 2009-2010 Matrix, 2005-2010 Avalon, 2007-2010 Camry, 2010 Highlander, 2007-2010 Tundra and the 2008-2010 Sequoia.

21.     On January 30, 2010, the January 2010 Recall was broadened to include Toyota vehicles sold overseas, including a recall of 1.8 million units in Europe.  As of the date of this recall, the total number of Toyota vehicles recalled is upwards of 7 million units.

22.     It is upon information and belief that Toyota vehicles also suffer from electronic system failures which cause acceleration of the vehicle.

23.     Plaintiff is an owner of a Toyota Camry 2007, whose Toyota vehicle may no longer be safe to operate due to a potential sudden acceleration problem caused by a defective accelerator pedal and/or electronic system.

## PLAINTIFF'S CLASS ALLEGATIONS

24.     Plaintiff seeks to bring this case as a class action, under Rule 23 *et. seq.*, on behalf

of herself and all others similarly situated in Massachusetts as members of a proposed class,

defined as follows:

Class I

>     All persons and entities in the Commonwealth of Massachusetts
>     who own or lease the older version of Prius (2004-09); Toyota
>     Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota
>     Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10
>     ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain
>     2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain
>     2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra
>     and 2008-2010 Sequoia (hereinafter collectively know as "Toyota
>     vehicles".

Class II

>     All persons and entities in the United States who own or lease the
>     older version of Prius (2004-09); Toyota Camry (2007-10 model
>     year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10);
>     Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10
>     IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla;
>     2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry;
>     Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010
>     Sequoia (hereinafter collectively know as "Toyota vehicles".

## NUMEROSITY

25.     The proposed class is so numerous that joinder of all of its members is

impractical.

### COMMON QUESTIONS OF LAW AND FACT

26.     Virtually all of the issues of law and fact in this class action are common to the

class and include at least the following:

>     (a)             Whether the defendants should be declared financially
>                     responsible for notifying all class members of the defective
>                     nature of the following vehicles the older version of Prius

6

(2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia;

(b)        Whether the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia are defective;

(c)        Whether the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia were designed negligently;

(d)        Whether the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia have defective brakes;

(e)        Whether the defendants knew or became aware that the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia were not properly designed, yet continued to manufacture, distribute, advertise, and market the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota

7

Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia without correcting the problems and while concealing the defective design of the vehicles from the public and the class;

(f)        Whether the defendants engaged in a pattern and practice of deceiving and defrauding the class and suppressing the defective nature of the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia;

(g)        Whether the defendants failed to give adequate warnings regarding the defects and limitations of the older version of Prius (2004-09); Toyota Camry (2007-10 model year); Toyota Avalon (2005-10); Toyota Tacoma (2005-10); Toyota Tundra (2007-10); Lexus (2007-10 ES350 and 2006-10 IS250/350; Certain 2009-2010 RAV4; Certain 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; Certain 2007-2010 Camry; Certain 2010 Highlander; 2007-2010 Tundra and 2008-2010 Sequoia;

(h)        Whether the defendants, through written advertising and other representations, created express or implied warranties that were breached;

(i)        Whether the defendants are strictly liable for damages to plaintiff and the members of the Plaintiff's Class;

(j)        Whether the defendants acted negligently;

(k)        Whether plaintiff and the members of the Plaintiff's Class are entitled to compensatory damages, and, if so, the nature of such damages;

(l)         Whether plaintiff and the members of the Plaintiff's Class
            are entitled to punitive or exemplary damages and, if so, the
            nature of such damages; and

(m)         Whether plaintiff and members of the Plaintiff's Class are
            entitled to an award of reasonable attorneys' fees,
            prejudgment interest, post-judgment interest and costs of
            suit.

### TYPICALITY

27.     Plaintiff's claims or defendants' defenses are typical of the Plaintiff's Class

members' claims.  Plaintiff and all members of the Plaintiff's Class sustained damages.  The

financial losses of each member of the class were directly caused by the defendant's motor

vehicles.

### ADEQUACY OF REPRESENTATION

28.     Plaintiff can and will fairly and adequately represent and protect the interests of

the class and has no interests that conflict with or are antagonistic to the interests of class

members.  Plaintiff has retained attorneys competent and experienced in class actions, including

consumer product, toxic tort, civil rights and mass injury class actions.  No conflict exists

between Plaintiff and Plaintiff's Class members.

### SUPERIORITY

29.     A class action is superior to any other available method for the fair and efficient

adjudication of this controversy and common questions of law and fact overwhelmingly

predominate over any individual questions that may arise.

(a)         The prosecution of separate actions by individual members
            of the Plaintiff's Class would create a risk of inconsistent or
            varying adjudications with respect to individual members
            of the class which would establish incompatible standards
            of conduct for the defendants or adjudication with respect
            to individual members of the class which would as a
            practical matter be dispositive of the other members not

9

> parties to the adjudications or substantially impair or impede their ability to protect their interests.

(b)    Adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members and impede the interest.

(c)    The defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTE OF LIMITATIONS

30.    The defects in the Toyota vehicles are latent and self-concealing. Accordingly, exercising reasonable care, Plaintiff and the members of the Plaintiff's Class cannot discover that such inherent defects exist.

31.    By suppressing the dissemination of truthful information regarding the defect in Toyota vehicles, the defendants have actively foreclosed Plaintiff and the members of the Plaintiff's Class from learning of the defects.

32.    By reason of the foregoing, the claims of Plaintiff and members of the Plaintiff's Class are timely under any applicable statute of limitations (as tolled by the filing of this class action Complaint) pursuant to the discovery rule and the doctrine of fraudulent concealment.

33.    Despite this knowledge and awareness, the defendants have continued to manufacture and sell Toyota vehicles, engaged in an ongoing scheme to hide the defective nature of the vehicles as set forth above.

### COUNT I
#### (STRICT LIABILITY)

34.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further alleges as follows.

35.    The defendants are engaged in the business of designing, manufacturing, producing, testing, inspecting, marketing and selling vehicles.

36.    The vehicles were expected to and did reach Plaintiff and members of the Plaintiff's Class without substantial change in the condition in which they were sold.

37.    The Toyota vehicles were in a defective condition, unreasonably dangerous to Plaintiff and members of the Plaintiff's Class, when they left the defendants' possession or control in that under normal conditions, usage and applications.

38.    Plaintiff and the members of the Plaintiff's Class used the vehicles in a manner and for a purpose for which they were intended and which was foreseeable by the defendants.

39.    The vehicles are defective in that they are incapable of being made safe for their ordinary and intended uses.  The defendants failed to provide Plaintiff and the Plaintiff's Class, either directly or indirectly, with adequate or sufficient warnings regarding the known or foreseeable risks and dangers inherent to this product.

40.    The activities engaged in by the defendant have created and/or are creating an unreasonable risk of harm to Plaintiff and members of the Plaintiff's Class and to other persons to whom Plaintiff and members of the Plaintiff's Class are or may be liable.  The vehicles are unsafe and thereby create a serious risk of personal injury.

41.    As a direct and proximate result of the defective condition of the defendants' vehicles, Plaintiff and members of the Plaintiff's Class have suffered and/or will suffer damages, which include, without limitation, costs to inspect, repair, and/or replace their vehicles.

## COUNT II
### (NEGLIGENCE)

42.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows.

11

43.     The defendants knew or should have known that the vehicles were not fit for their ordinary and foreseeable uses.

44.     The defendants knew or should have known that the vehicles they designed, manufactured, treated, produced, tested, inspected, marketed and/or sold, in ordinary and foreseeable use, would fail to perform as intended.

45.     Due to their superior knowledge of the defects in the vehicles, the defendants had and have a duty to disclose to the public the defective nature of the vehicles.

46.     The defendants failed to exercise reasonable care with respect to the design, development, manufacture, production, testing, inspection, marketing and/or sale of the vehicles by, among other things, failing to design and/or manufacture the vehicles in a manner to ensure that under normal usage, conditions and applications, they would not suffer from acceleration defects in the car.

47.     The defendants' negligence as set forth above directly and proximately caused the harm suffered and/or being suffered by Plaintiff and members of the Plaintiff's Class.

48.     As a direct and proximate result of the defendants' negligence, Plaintiff and members of the Plaintiff's Class have and/or will suffer damages, which include, without limitation, costs to inspect, repair, and/or replace their vehicles and other damaged property in an amount to be determined at trial.

### COUNT III
### (BREACH OF EXPRESS WARRANTIES)

49.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows.

50.     The defendants have breached their express warranties to Plaintiff and the members of the Plaintiff's Class in that the vehicles do not perform as represented by the defendants.

51.     As a result of the defendant's breach of their express warranties, Plaintiff and the members of the Plaintiff's Class have or will suffer damages, which include, without limitation, costs to inspect, repair, and/or replace their vehicles in an amount to be determined at trial.

## COUNT IV
### (BREACH OF IMPLIED WARRANTIES)

52.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows.

53.     The defendants have breached the implied warranty of merchantability in that the vehicles are defective and not fit for the ordinary purposes, that is, to provide a durable, low maintenance, suitable motor vehicle.

54.     The defendants have breached the implied warranties of fitness for a particular purpose in that the vehicles are defective and not fit for the purposes.  Defendants are aware of the particular purpose for which the vehicles are intended, and Plaintiff and the members of the Plaintiff's Class relied upon defendants' skill and judgment in deciding to purchase the vehicle.

55.     As a result of the defendants' breach of the implied warranties, Plaintiff and the members of the Plaintiff's Class have or will suffer damages, which include, without limitation, costs to inspect, repair, and/or replace their vehicles in an amount to be determined at trial.

## COUNT V
### (Declaratory Judgment/Equitable and Injunctive Relief)

56.     Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

13

57.     This claim is asserted on behalf of the entire Class.

58.     Plaintiff and the Class are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

59.     Plaintiff and the Class will suffer irreparable harm if the Court does not declare the vehicles to be unreasonably dangerous and defective, and if defendant is not ordered to recall, buy back, and/or retrofit the vehicles.

60.     Plaintiffs on behalf of themselves and all others similarly situated, demand such declaratory relief, and further, that defendants be ordered to (1) recall, buy back, and/or retrofit the vehicles, (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the vehicles, (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect in, and dangers associated with, the vehicles, (4) complete, at their own cost, any and all necessary research and testing to make available a safe alternative design and/or retrofit, and (5) prospectively utilize available alternative designs in the manufacture of the vehicles to eliminate the defect.

## COUNT VI
### (Fraud, Deceit, And Intentional Misrepresentation)

61.     Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

62.     This claim is asserted on behalf of the entire Class.

63.     Defendants made the misrepresentations and omissions regarding the acceleration defect in the vehicles.

64.     Defendants made these misrepresentations and omissions knowingly, intentionally, or with a reckless disregard for the truth of the misrepresentations and for the affirmative statements rendered misleading by the omissions.

65.     As a direct and proximate cause of Defendants' acts, Plaintiff and the Class have suffered actual damages and members of the Class are threatened with irreparable harm by undue risk of physical injuries or death.

66.     Plaintiff, on behalf of herself and all others similarly situated, demand judgment against defendants for compensatory damages for themselves and each member of the Class in an amount to be proven at trial, punitive damages for the Class as a whole, appropriate injunctive, equitable and/or declaratory relief for the Class as a whole, plus attorneys' fees, interest and costs.

## COUNT VII
### (Negligent Misrepresentation)

67.     Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

68.     This claim is asserted on behalf of the entire Class.

69.     Defendants made the misrepresentations and omissions described above.

70.     Defendants made these misrepresentations and omissions without a reasonable basis for believing the misrepresentations to be true, and without a reasonable basis for believing the omitted information need not have been disclosed.

71.     As a direct and proximate cause of defendants' negligence, Plaintiff and the Class have suffered actual damages and members of the Class are threatened with irreparable harm by undue risk of physical injuries or death.

72.     Plaintiff, on behalf of herself and all others similarly situated, demand judgment against defendants for compensatory damages for themselves and each member of the Class in an amount to be proven at trial, plus attorneys' fees, interest and costs.

## COUNT VIII
## (Violation of Magnuson Moss Warranty Act)

73.     This claim is asserted on behalf of the entire Class.

74.     As set forth above, defendants expressly warrant the vehicles to be free of defects at the time of delivery, which warranties are express warranties within the meaning of section 2-313 of the Uniform Commercial Code. Defendants breached their express warranties by offering for sale, and selling as safe, vehicles that they knew are, by design, latently unsafe and likely to cause serious injury or death to Plaintiff and members of the Class.

75.     As set forth above, defendants impliedly warrant the vehicles to be merchantable and fit for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings. Because of their undisclosed unreasonably dangerous nature and propensity to experience a sudden acceleration while operating at normal speeds, the vehicles are unsafe, unmerchantable, and unfit for their ordinary use when sold, and threaten injury to Plaintiff and members of the Class. Defendants have therefore breached the implied warranty of merchantability.

76.     Any limitation periods, limitations on recovery, or exclusion of implied warranties in defendant's express warranty are unconscionable within the meaning of section 2-302 of the Uniform Commercial Code, and therefore are unenforceable, in that, among other things, the vehicles contain a latent defect of which defendant was aware at the time of sale, and buyers lacked a meaningful choice with respect to the terms of the express written warranties due to unequal bargaining power and a lack of warranty competition among dominant vehicle manufacturers.

77.     Defendants' knowledge of the dangerous nature of the vehicles during, and prior to, the Class period as a result of numerous consumer complaints and its own internal research

and development has given defendant more than adequate opportunity to cure the problem, which opportunity it has not taken to date.

78.    Independent of its breach of express and implied warranties, defendants have engaged in tortious intentional misconduct as alleged below, which conduct was oppressive, fraudulent, and malicious.

79.    As a direct and proximate cause of defendants' breach of express and implied warranties, Plaintiff and members of Class suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays the Court to enter judgment against the defendants and in favor of Plaintiff, on behalf of herself and the members of the Plaintiff's Class, and to award the following relief:

(a)    Certifying this action as a class action pursuant to Rule 23, *et. seq.*;

(b)    Declaring the defendants financially responsible for notifying all class members that the vehicles are defective and for the costs and expenses of repair and replacement, and/or annual inspections, of all the vehicles, with restitution and refunds to plaintiff and the class members of all or part of the sums paid by them to purchase the vehicles or motor vehicles;

(c)    Declaring any limitations of remedies and the exclusion of the implied warranties of merchantability and fitness for a particular purpose to be unlawful and unconscionable and unenforceable;

(d)    Declaring that the defendant has breached the express and implied warranties given with the purchase of the vehicles;

(e)    Awarding each class member compensatory damages for the acts complained of herein;

(f)    Awarding each class member punitive damages for the acts complained of herein;

(g)        Awarding the class costs and attorneys' fees against the
           defendant, as

      1)      allowed by law, and/or awarding counsel for
                   the class attorneys' fees; and

      2)      granting such other or further relief as may
                   be appropriate under the circumstances.

## DEMAND FOR JURY

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/S/ HOWARD FRIEDMAN
Howard Friedman, BBO #180080
Law Offices of Howard Friedman PC
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com

Arnold Levin, Esquire
Daniel C. Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 telephone
(215) 592-4663 telecopier

Elmer Robert Keach, III, Esquire
LAW OFFICES OF ELMER ROBERT KEACH, III, PC
1040 Riverfront Center
Post Office Box 70
Amsterdam, NY 12010
Telephone:    518.434.1718
Telecopier:   518.770.1558
Electronic Mail: bobkeach@keachlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE CLASS**

Dated: March 3, 2010